IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **VICE MEDIA CANADA INC. and VICE MEDIA LLC,** | Civil Action No. 5:15-CV-201 |
| Plaintiffs, | |
| -against- | |
| **VIRTUE MARKETING LLC and TYLIE EAVES,** | |
| Defendants. | |

## COMPLAINT

Plaintiffs Vice Media Canada, Inc. ("Vice Canada") and Vice Media LLC (formerly Vice Media Inc.) ("Vice Media", and, together with Vice Canada, "Vice" or "Plaintiffs"), as and for their Complaint herein as against defendants Virtue Marketing LLC ("Virtue Marketing") and Tylie Eaves ("Eaves", and together with Virtue Marketing, "Defendants"), allege as follows.

### Nature Of The Action

1. As more fully set forth below, Vice is one of the most famous and distinctive media companies in North America. Vice's media portfolio includes Vice.com, Vice Magazine, Vice Films, Vice Books, Vice Records, and an Emmy-Award winning television series on HBO entitled "VICE".

2. Of particular relevance to this action, Vice owns Virtue

{N0414759; 6}

Worldwide, which it started in 2006. Virtue Worldwide is a full service advertising and marketing agency, covering brand strategy, creative development, website development, production, distribution and research. Significantly, Vice owns the entire right, title and interest in and to the word trademark VIRTUE (the "VIRTUE Mark"), including but not limited to its pending U.S. Trademark Application, Serial No. 86230249, filed with the United States Patent and Trademark Office ("USPTO"), for, <u>inter alia</u>, "advertising and marketing services, namely promoting the goods and services of others" (a copy of the Application is annexed hereto as Exhibit A).

3.  Vice is seeking an injunction and other relief against Defendants who, Vice has recently learned, have been utilizing, without authorization, the VIRTUE name and VIRTUE Mark on its website, [www.virtue-marketing.com](www.virtue-marketing.com) ("Defendants' Website") and otherwise for competing marketing and advertising services. In particular, Defendants are using the VIRTUE name and Mark to sell and/or provide advertising and/or marketing services to others. In doing so, Defendants are undoubtedly deceiving consumers and falsely suggesting a connection between Defendant Virtue Marketing, on the one hand, and Plaintiff Vice and its advertising agency Virtue Worldwide on the other hand.

4.  In doing so, Defendants have misappropriated and exploited the goodwill and unique reputation of the VIRTUE name and mark. Defendants'

conduct has caused and, if left unchecked, will continue to cause, irreparable damage to the reputation and goodwill associated with the VIRTUE Mark.

5. Further, Defendants' infringing conduct is willful, intentional and, in fact, brazen. As detailed below, Vice has sent several cease and desist letters to Defendants, yet they have flatly refused to cease their wrongful and unauthorized use of the VIRTUE name and Mark. Thus, absent injunctive relief, it is apparent that Defendants will not voluntarily stop their clearly wrongful and infringing conduct.

## The Parties, Jurisdiction and Venue

6. Plaintiff Vice Canada is a corporation organized under the laws of Canada with its principal place of business located at 127B King Street, Montreal, Canada H3C 2P2.

7. Plaintiff Vice Media is a limited liability company organized under the laws of Delaware, with its principal place of business located at 97 North 10th Street, Brooklyn, NY 11211. None of its members are citizens of Georgia.

8. Vice owns and operates Virtue Worldwide, Vice's in-house advertising and marketing agency that performs advertising and/or marketing services nationwide and in Georgia (performing substantial such services for AT&T and Coca-Cola).

9. Upon information and belief, Defendant Virtue Marketing is a limited liability company organized under the laws of Georgia, with its principal place of business located at 509 Hialeah Drive, Bonaire, GA 31005. Upon information and belief, Virtue Marketing's only member is Eaves.

10. Upon information and belief, Defendant Eaves is the owner, sole member, CEO and founder of Virtue Marketing, residing and/or with a place of business at 509 Hialeah Drive, Bonaire, GA 31005, and is a citizen of the State of Georgia. Eaves is the driving force behind Virtue Marketing's infringement of the VIRTUE Mark, and authorized and/or approved the acts of infringement and/or unfair competition complained of herein. Further, upon information and belief, Eaves individually infringes upon the VIRTUE Mark, in addition to doing so through her entity Virtue Marketing.

11. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

12. This is an action for unfair competition/false designation of origin under the Trademark Act of 1946, 15 U.S.C. § 1125(a), as amended (the "Lanham Act").

13. Accordingly, the Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and 1338, and has jurisdiction over the state law claims under the principles of supplemental jurisdiction. 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over Defendants because Defendants Virtue Marketing and Eaves conduct business and/or are citizens of this State, and because acts of infringement upon which the allegations in this Complaint are based occurred in this State.

15. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because Defendants reside in this District, and because Defendants and Plaintiffs offer advertising and/or marketing services in this District.  Further, Defendants have caused damages, injury and/or harm to Plaintiffs in this District.

### Vice, Virtue and The Subject Trademark Rights

16. Originating in 1994, Vice is a global media company that includes websites, print, concerts, parties/events, music, online video divisions, television divisions and feature film divisions that operate throughout the United States and in over thirty-five countries. Over the last decade, Vice has grown to over 1,200 employees and more than $900 million in annual revenues.  Vice provides media content over and operates numerous websites including, but not limited to, its' extremely popular homepage entitled "VICE" (www.vice.com), which is one of the most visited websites in the world. Vice also creates, produces, and distributes, broadcasts and/or transmits television shows and/or internet programs, films, DVDs, records, books and other entertainment media content,

including a television series on HBO entitled "VICE". While Vice has an audience of all ages, it has made particular in-roads with the coveted but often hard to reach 18-34 year old demographic.

17. In or about 2006, Vice created Virtue Worldwide, Vice's in-house creative, advertising and marketing agency. Virtue Worldwide provides not only advertising and marketing, but also social media, branding and other advertising services.

18. Vice named its advertising agency Virtue in order to play off of the Vice name (i.e., a virtue is the opposite of a vice, and the agency extolls the virtues of its advertisers).

19. Vice has continuously used the VIRTUE name and Mark since at least 2006 to brand its services to sell to actual and/or potential advertisers, businesses and/or consumers. In particular, Virtue Worldwide capitalizes on Vice's audience and Vice's knowledge of the market by selling advertisers, businesses and/or consumers expertise and other services on how to reach the consuming public. When advertisers, businesses and/or consumers see or hear the VIRTUE name and mark, they likely believe they are dealing with Vice's Virtue Worldwide agency and are taking advantage of the resources and expertise at Virtue Worldwide's disposal and through its association with Vice.

20. Virtue Worldwide has been incredibly successful. Virtue

Worldwide has provided nationwide advertising, marketing, branding, and social media services for the following engagements, just to name a few:

- Millennial agency of record for AT&T in Atlanta, including advertising spots, content, events, social feeds.

- Agency of record for K Swiss and Palladium Boots, including design, advertising and media activation.

- Content and event agency for ABI, including work for Budweiser, Corona, and Stella Artois.

- Content agency for Intel.

- Content strategy agency for Unilever.

- Research agency for Chanel, including a global study on the new luxury consumer.

- Branded content agency for Fox, specifically for the <u>Planet Of The Apes</u>.

21. In addition, Virtue Worldwide provides advertising and marketing services for Coca-Cola in Atlanta, GA. Virtue's other nationwide campaigns include campaigns for Dell Computer, Red Bull and The Alliance of Action Sports, or "Alli". Further, advertisements produced by Virtue Worldwide have been seen on NBC, MTV, Comedy Central and ESPN. In the last year alone, Virtue Worldwide provided advertising and marketing services for over 50 clients.

22. The advertising and marketing services Virtue Worldwide provides have established considerable goodwill in the VIRTUE mark in the United States.

23. Vice owns the entire right, title and interest in and to the trademark VIRTUE including, but not limited to, the uses set forth in the VIRTUE Application:

> Goods and Services: IC 035 US 100 101 102 G&S: Advertising and marking; advertising and marketing consultancy; advertising and marketing services, namely, promoting the goods, services, brand identity and commercial information and news of third parties through events and editorial print audio, video film, digital social and on-line medium; advertising and branding services, namely, creating corporate and brand identity for others; public relations, social media strategy and marketing consultancy focusing on helping clients create and extend their product and brand strategies by building virally engaging marketing solutions, creative development of marketing strategies, concepts and tactics, namely, audience development, brand awareness, customer relations, online community building and digital word of mouth communications; production of advertising material featuring original video, photography, and copywriting for marketing branding, promoting or advertising the goods and services of others; advertising, marketing and promotional services, namely, development of advertising campaigns for television, print media and web pages featuring original video, photography and copywriting for marketing branding, promoting or advertising the goods and services of others; promoting the goods, services, brand identity and commercial information and news of third parties by providing websites featuring advertisements for the goods and services of others on a global computer network; marketing and promotion of special events; special event planning for business purposes; special event planning for commercial, promotional or advertising purposes; event planning and management for marketing, branding, promoting or advertising the goods and services of others.  FIRST USE: 20060930 FIRST USE IN COMMERCE: 20060930.

(See Exhibit A).

24. Vice has continuously used the VIRTUE Mark in the United States since at least as early as 2006, and has invested and continues to invest

heavily to develop and enhance the fame of the VIRTUE Mark.  Virtue Worldwide has approximately 75-100 full-time staffers between its U.S. offices, and a steady bench of freelancers across all teams at any given time.

25. Virtue Worldwide has been the subject of much media attention, including an article in the New York Times dated May 28, 2009 entitled <u>The Vice and Virtue of Marketing</u>, and an article in AdWeek dated May 12, 2011 entitled <u>Spotlight: Spencer Baim The Head of Virtue, Vice Media's Marketing Arm, Plays It Cool</u> (<u>see</u> Exhibit B hereto).

26. As a result of the foregoing, the VIRTUE Mark has acquired a high level of fame and distinctiveness in the marketplace in connection with advertising and marketing services, and represents extraordinarily valuable goodwill that Vice owns.

**<u>Defendants' Infringing Use of the VIRTUE Name and Mark</u>**

27. In or about January 2015, Vice became aware, through a trademark search, that Defendants were using the VIRTUE Mark without authorization for advertising and/or marketing services for others, including through the use of Defendants' Website, <u>virtue-marketing.com</u> (<u>see</u>, <u>e.g.</u>, examples of Defendants' infringing activities at Exhibits C and D hereto).

28. Accordingly, promptly upon learning of Defendants' infringing activities, Vice, by letter dated January 16, 2015 sent by overnight courier,

demanded that Defendants, <u>inter alia</u>, cease and desist from using the VIRTUE name and Mark relating to providing advertising and/or marketing services to others (the "January Letter", a true and correct copy of which is annexed hereto as Exhibit E).

29. Defendants did not respond to the January Letter.  Instead, with full knowledge of Vice's senior trademark rights, Virtue Marketing filed two United States trademark applications in bad faith for marks confusingly similar to the VIRTUE Mark, as follows:

- <u>VIRTUE MARKETING</u>
  U.S. Trademark Application Serial No. 86510822
  Class 35: Copywriting, advertising, social media management, Blog and article writing. E-books and videos.  Graphic design, website development.
  First Use in Commerce:  January 1, 2012

- <u>VIRTUE MARKETING RESPECT REFINEMENT RESULTS</u> (design mark)
  U.S. Trademark Application Serial No. 86516300
  Class 35:  Advertising and marketing
  Section 1(b) Intent to Use application

(Collectively, "Defendants' Applications", copies of which are annexed hereto as Exhibits F and G, respectively).  Significantly, Defendants admit in their Application and otherwise that they did not begin using the infringing Virtue Marketing name until 2012, well after Vice's first use of the VIRTUE name and Mark, which is at least as early as 2006.

30. Accordingly, Vice sent a second cease and desist letter to Defendants, dated February 25, 2015 (the "February Letter") seeking the same relief as the January Letter, and in addition demanding that Defendants withdraw the confusingly similar trademark applications it filed (see Exhibit H hereto).

31. By email dated March 9, 2015, Defendants stated that they refused to cease their infringing actions or to withdraw their applications, arguing that they are permitted to use the VIRTUE Mark because Vice's VIRTUE Mark has not yet registered (see Exhibit I hereto).

32. On March 30, 2015, Defendants filed an opposition to Vice's VIRTUE Application ("Defendants' Opposition, a copy of which is annexed hereto as Exhibit J). In its Opposition, Defendants concede that there is a likelihood of confusion between Vice's VIRTUE name and mark and Defendants' use of the name Virtue Marketing (see Ex. J ("[t]he proposed mark is confusingly similar to mark in use by my company").

33. Accordingly, Vice sent a third letter to Defendants dated April 2, 2015 (the "April Letter", a copy of which is annexed hereto as Exhibit K), explaining that priority of use, and not registration, determines ownership of a Mark. Vice provided case law in support of this black letter law. In the letter, Vice further explained that since Vice has priority of use (Vice has been using the VIRTUE Mark since at least 2006 and Defendants claim in their application that

they did not begin using the VIRTUE name or Mark until 2012), Defendants must immediately cease and desist or Vice would have no choice but to commence court action.

34. Defendants responded by letter dated April 13, 2015 (see Exhibit L annexed hereto). Defendants argued that it is "unclear" why Vice believes it has ownership of the VIRTUE Mark, and stated that Defendants will not cease and desist. Accordingly, Vice was forced to commence this action.

## FIRST CAUSE OF ACTION

### (Federal Unfair Competition/False Designation of Origin, 15 U.S.C. § 1125(a))

35. Vice repeats and realleges each and every allegation set forth above as if fully set forth herein.

36. Defendants' unauthorized use of the VIRTUE name and VIRTUE Mark in connection with advertising and/or marketing services falsely suggests to the general public the origin and source of same, and creates actual confusion and a likelihood of further confusion to advertisers, businesses and/or consumers as to the source, sponsorship and endorsement of the advertising and/or marketing services.

37. Indeed, the USPTO has initiated Office Actions with respect to Defendants' Applications "because of a likelihood of confusion" with Vice's VIRTUE Mark and Application (see, e.g., Ex. M hereto).

38. Defendants' aforesaid unlawful and unauthorized use of the VIRTUE Mark creates the express or implied misrepresentation that such services are authorized, endorsed or approved by Vice or Virtue Worldwide when they are not.

39. Defendants' conduct as described above has been done willfully with knowledge of and/or reckless disregard for Vice's rights.

40. Defendants' aforesaid actions constitute false designation of origin and unfair competition in violation of Vice's rights under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

41. As a proximate result of the acts of Defendants, as alleged herein, Vice has suffered, is suffering and will continue to suffer irreparable damage and, unless Defendants are restrained from continuing these wrongful acts, the damage to Vice will increase.

42. Vice has no adequate remedy at law.

## SECOND CAUSE OF ACTION

**(Common Law Trademark Infringement)**

43. Vice repeats and realleges each and every allegation set forth above as if fully set forth herein.

44. By reason of Defendants' actions alleged herein, Vice has suffered, and will continue to suffer, irreparable injury to its rights and suffer

substantial loss of goodwill, reputation and loss of value in the VIRTUE Mark, unless and until Defendants are enjoined from continuing their wrongful acts.

45. By reason of Defendants' actions alleged herein, Vice has been damaged in an amount not presently ascertained, and such damage will continue and increase unless and until Defendants are enjoined from continuing their wrongful acts.

46. Defendants' conduct in this cause of action is willful, wanton, malicious, oppressive and in conscious disregard of Vice's rights in its VIRTUE Mark, justifying the imposition of punitive and exemplary damages.

## THIRD CAUSE OF ACTION

**(Unfair Competition, O.C.G.A §§ 10-1-370 To 375)**

47. Vice repeats and realleges each and every allegation set forth above as if fully set forth herein.

48. Vice has developed valuable goodwill in the VIRTUE Mark.

49. Defendants' knowing and willful unauthorized use of the VIRTUE name and Mark have permitted Defendants to palm off their services to the general public as those of Vice and/or Virtue Worldwide, all to the detriment of Vice and Virtue Worldwide and the unjust enrichment of Defendants.

50. Defendants have knowingly and willfully traded on the goodwill associated with the VIRTUE Mark and have misled the public into

assuming a connection between the services of Defendants and Vice and/or Virtue Worldwide.

51. Defendants have misappropriated and used the VIRTUE Mark without Vice's authorization and in competition with Vice and/or Virtue Worldwide.

52. Defendants' actions have likely caused confusion, have likely misled and deceived the public as to the source of Defendants' services, have likely permitted and accomplished the palming off of such services as Vice's or Virtue Worldwide's, and/or have likely falsely suggested a connection between them, all of which constitutes unfair competition in violation of Georgia common law.

53. As a result of Defendants' aforesaid conduct, Vice and Virtue Worldwide have suffered irreparable injury to the extent that it has: (a) lost the right to control the commercial and trade use of the VIRTUE Mark; (b) lost earnings as a result of diverted revenues or customers; and (c) suffered damage to their reputation and goodwill.  Unless Defendants are preliminarily and permanently enjoined from such conduct, Plaintiffs will continue to suffer such irreparable injury to their goodwill and reputation.

54. Plaintiffs have no adequate remedy at law.

55. Moreover, because Defendants willfully engaged in their deceptive trade practices knowing such practices to be deceptive, Plaintiffs should be awarded their reasonable attorneys' fees under O.C.G.A. § 10-1-373(b).

### FOURTH CAUSE OF ACTION

### (Dilution, O.C.G.A. § 10-1-451(b))

56. Vice repeats and realleges each and every allegation set forth above as if fully set forth herein.

57. Defendants' wrongful use of the same or similar VIRTUE name and Mark has caused a likelihood of injury to the business and/or reputation of Vice and/or Virtue Worldwide, and/or has caused a likelihood of dilution of the distinctive quality of the VIRTUE name and Mark.

58. Such wrongful conduct by Defendants constitutes trademark dilution and injury to business reputation in violation of O.C.G.A. § 10-1-451(b), and has caused and will continue to cause irreparable injury to Vice unless and until Defendants are preliminarily and permanently enjoined by the Court. Vice has no adequate remedy at law.

### Prayer for Relief

WHEREFORE, Vice respectfully prays that this Court:

a. Adjudge that the VIRTUE Mark has been infringed as a direct and proximate result of the willful acts of Defendants as set forth in this

Complaint, in violation of Plaintiffs' rights under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under Georgia common and/or statutory law;

      b.    Issue a judgment and/or an order preliminarily and permanently restraining, enjoining, and prohibiting Defendants and their agents, servants, employees, officers, members, successors and assigns, and all persons, firms and corporations acting in concert or participation with Defendants or on Defendants' behalf, from:

      (i)    Using the VIRTUE Mark or any trademark, service mark, logo or trade name that is confusingly similar thereto in connection with advertising and marketing services;

      (ii)    Using the VIRTUE Mark in connection with any website, domain name, Facebook page, LinkedIn page, Twitter ID, or any other online transmission or posting, including but not limited to the domain name virtue-marketing.com in connection with advertising and marketing services;

      (iii)    Otherwise infringing the VIRTUE Mark or using any similar designation, alone or in combination with any other components in connection with advertising and marketing services;

      (iv)    Causing a likelihood of confusion or misunderstanding as to Defendants' affiliation, connection or association with Plaintiffs and any of their advertising or marketing services;

      c.    Order Defendants to withdraw Defendants' Opposition and Defendants' Applications filed with the USPTO;

      d.    Award Plaintiffs any additional injunctive relief not specified above as provided for in § 34 of the Lanham Act, 15 U.S.C. § 1116;

e. Declare this case to be exceptional under 15 U.S.C. § 1117 because of Defendants' bad faith actions and award Plaintiffs damages in an amount to be determined at trial but equal to treble the greater of Defendants' profits or Plaintiffs' actual damages, plus pre-judgment and post-judgment interest, costs and attorneys' fees, pursuant to Plaintiffs' claims;

f. Award Plaintiffs punitive or exemplary damages for Defendants' knowing, willful and intentional violation of Plaintiffs' rights under Georgia law;

g. Award Plaintiffs such sums as are necessary to place or compensate Plaintiffs for corrective advertising; and

h. Grant Plaintiffs such other and further relief as this Court deems to be just and proper.

Dated:   May 29, 2015

ARNALL GOLDEN GREGORY LLP

By:   s/ Anuj Desai
    Anuj Desai
    Georgia Bar No. 193889
    Andrew C. Stevens
    Georgia Bar No. 183366
    (*admission pending*)

171 17th Street Northwest, Suite 2100
Atlanta, GA  30363
(T) 404-873-8658
(F) 404-873-8659
anuj.desai@agg.com

Gerry Silver, Esq.
SULLIVAN & WORCESTER LLP
(*Pro Hac Vice Application To Be Filed*)
1633 Broadway
New York, NY  10019
(T) (212) 660-3096
(F) (212) 660-3001
gerry.silver@sandw.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Kimberly B. Herman, Esq.
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(T) (617) 338-2943
(F) (617) 338-2880
kherman@sandw.com
*Attorneys for Plaintiffs*